# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW CARELL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> VALLEY HEALTH SYSTEM, INC., et al. <br><br> Defendant. | Civil Action No.: 2:22-cv-05932-ES-CLW |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

**COYLE LAW GROUP, P.C.**
John D. Coyle
201 Littleton Road, Suite 210
Morris Plains, NJ 07950
Tel. (973) 370-0592
jcoyle@coylelawgroup.com

***On the Brief*:**
John D. Coyle
Donald A. Soutar
Lili J. Caparosa

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii, iii

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF FACTS ................................................................... 5

    A.    Plaintiffs' claims and Valley's Defenses ............................... 5

    B.    The Relevant Governmental Orders .................................... 6

    C.    The Subpoenas ...................................................... 7

RELEVANT PROCEDURAL HISTORY ................................................. 8

ARGUMENT ................................................................................. 9

    I.    Standard for a Protective Order ......................................... 9

    II.    The Information and Documents Sought Are Relevant for the *McDonnell Douglas* Burden Shifting Analysis ......................... 11

CONCLUSION ............................................................................ 17

# TABLE OF AUTHORITIES

**CASES**                                                                          **Page(s)**

*Cipollone v. Liggett Grp*., 785 F.2d 1108 (3d Cir. 1986) .......................................10

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig*., 924 F.3d 662 (3d Cir. 2019) .................................................................................................................9

*In re Lazaridis,* 865 F. Supp. 2d 521 *(D.N.J. 2011)* ................................................11

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ...............................11, 12

*Pansy v. Borough of Stroudsbur*g, 23 F.3d 772 (3d. Cir. 1994).........................9, 10

*Price v. Cty. of Salem, No. 22-6042 (RBK)(EAP), 2024 U.S. Dist. LEXIS 40827 (D.N.J. Mar. 8, 2024)* ................................................................. *Passim*

*Scouler v. Craig,* 116 F.R.D. 494 (D.N.J. 1987) ....................................................10

*Staff4Jobs, LLC v. List Logistics, LLC,* Civil Action No. 18-13399 (BRM)(LHG), 2020 U.S. Dist. LEXIS 267689 (D.N.J. Oct. 19, 2020)........10

*Weinstein v. Brisman,* Civil Action No. 18-3910 (KM) (MAH), 2020 U.S. Dist. LEXIS 53151 (D.N.J. Mar. 26, 2020)............................................11

*Tisby v. Camden Cty. Corr. Facility*, 448 N.J. Super. 241 (App. Div. 2017) ....11,12

*Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005) .........................................11

**STATUTES AND RULES**                                                              **Page(s)**

New Jersey Law Against Discrimination .........................................................*passim*

Title VII of the Civil Rights Act ....................................................................*passim*

42 U.S.C. §2000e(j) ...............................................................................14, 21, 27

Federal Rule of Civil Procedure 26 ..........................................................................9

Federal Rule of Civil Procedure 45 ..........................................................................9

## **PRELIMINARY STATEMENT**

Plaintiffs Andrew Carell, Melissa Casamassina, Julietta Everett, Amanda Hickman, Magda Jasek, John Khanjian, Alfonso Padilla, Bridget Pitt, Eric Saunders, and Bernadette Zelaya (collectively, "Plaintiffs") submit this memorandum of law in opposition to the motion of defendant Valley Health System, Inc, The Valley Hospital, Inc., and Valley Physician Services P.C. and Jose A. Balderrama's motion for a protective order. As set forth below, Valley has been on notice that the discovery sought in these subpoenas is relevant to the claims in this case <u>before</u> Plaintiffs were even fired. The discovery sought is directly relevant to Plaintiffs' claims and Valley's affirmative defenses, and this motion should be denied.

Plaintiffs were employees of Valley Health System, Inc., The Valley Hospital, Inc., Valley Physician Services P.C. ("Valley") who sought exemptions from Valley's mandatory COVID-19 vaccination policy. Plaintiffs were all fired by Valley because it contended that no employee, no matter what their position who worked on-site at Valley's facilities could be accommodated. Meanwhile, Plaintiffs have alleged that "unvaccinated personnel in hundreds of facilities have been safely performing the essential functions of their job without being vaccinated with the accommodations of masking and routine testing - which is the exact same accommodation required by New Jersey Governor Murphy in his Executive Order 283." (ECF #13, ¶ 19).

The Complaint here brings claims under Title VII and the New Jersey Law Against Discrimination, and an element of those claims is Valley's Affirmative Defenses that it could not accommodate Plaintiffs, and Plaintiff's burden under the applicable legal standard to show that Valley's accommodations denial was pretext. The Subpoenas seek reports that the third-party hospital systems were legally required to prepare in accordance with New Jersey Executive Directive No. 21-011, disclosing, among other things, the number of employees granted an exemption from the COVID vaccination Policy.

The question of how Valley could determine that <u>nobody</u> could be "safely" accommodated while seemingly every other hospital in the State of New Jersey managed to find a way to do so, including Subpoena recipient HMH 7.7 miles away has been an issue in dispute <u>before Plaintiffs were fired</u>. On September 30, 2021, after Plaintiffs' accommodations were denied. The undersigned—representing Plaintiffs pre-termination—sent the following to Defendant Jose A. Balderrama:

> Merely using the words "undue hardship" is not a replacement for participating in the mandatory EEOC accommodation process. Ms. Casamassina and all Valley employees have been wearing required PPE equipment, including masking and gloves for more than the last sixteen months. The current legal mandate from the Governor of New Jersey has placed a requirement for vaccination or testing for all employees in Executive Order 252. According to recent estimates as many as 5% to 10% of all healthcare workers in New Jersey are unvaccinated. The article notes that Hackensack Meridian Heath has a 9% non-vaccinated rate and Holy Name has

12%. University Hospital in Newark has 5% of its staff exempted from the COVID vaccine due to a religious objection.

A calculation from April 2020 lists 394,630 total health care workers in New Jersey. If the low-end 5% calculation is correct, that means that there 19,731 unvaccinated health care workers in New Jersey; nearly 40,000 if the 10% number is correct. Somehow Ms. Casamassina is completely different from the 40,000 other unvaccinated healthcare workers in New Jersey.

Or the difference is Valley. Instead of participating in the legally mandated interactive process, Valley has set up a pretext for its religious discrimination against her and soon-to-be wrongful termination.

In response, Defendant Balderrama stated that Valley reviewed the additional information provided in the appeal, rejected the appeal and terminated Plaintiffs.

Based upon the NJ.com article cited to Mr. Balderrama, Plaintiffs have a good faith basis for seeking this information from the . This matches my firm's historical information, which is that we represented 48 employees who were granted accommodations from the COVID policies at the three systems subpoenaed, whether directly, or through appeals similar to the one Mr. Balderrama rejected.

Plaintiffs contend that numerous hospitals across New Jersey complied with state and federal law and provided religious exemptions and reasonable accommodations to employees with sincerely held religious beliefs that prohibit vaccination. The information from the article, along my firm's firsthand information, is the good faith basis for seeking this information. Plaintiffs served subpoenas *duces*

*tecum* upon Hackensack Meridian Health, Robert Wood Johnson Barnabas Health, and Atlantic Health Systems Inc (collectively "Third-Party Hospitals"), seeking reports they were required to prepare in accordance with New Jersey Executive Directive No. 21-011, disclosing, among other things, the number of employees granted an exemption from the mandatory COVID-19 vaccination policy. This information is directly relevant to Plaintiffs' claims in this matter because it tends to negate Valley's claim that it could not accommodate <u>any</u> on-site worker and provides circumstantial evidence of a pretext for religious discrimination.

Defendant has now moved to seek a protective order with the generic assertion that the information sought is not relevant to lead to the discovery of admissible evidence. Valley argues that nobody who worked for Valley can be accommodated is independent from whether any other health care facility could accommodate their employees. This is nonsense, but moreover, not ripe for determination at this time.

There may be a time in this matter where Valley can argue that COVID operated differently in Ridgewood than it did in Hackensack, Morristown, New Brunswick, or in any of the other dozens and dozens of municipalities where the subpoenaed systems operate. Valley is free to argue at some point that while thousands of medical professionals were accommodated with masking and testing across the entire state, starting with one of the largest hospitals in the state just 7 miles away, it could not accommodate any. But the question of the admissibility of

this information is not before the Court; this is pretrial discovery about an issue that Valley considered before firing Plaintiffs, raised affirmative defenses regarding, and that is critical to the burden shifting requirements for Plaintiffs' claims. Accordingly, this motion for a protective order should be denied.

## STATEMENT OF FACTS RELEVANT TO THIS MOTION

Plaintiffs' Claims and Valley's Defenses

Plaintiffs' *Second Amended Complaint* alleges religious discrimination against Valley pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, *et seq.* ("Title VII") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49 ("NJLAD"), based on Valley's denial of Plaintiffs requests for religious exemptions and accommodations to the Policy. [ECF#13]. Specifically, Plaintiffs have asserted claims for Religious Discrimination under NJLAD (Count I); Religious Discrimination under Title VII (Count II); Failure to Accommodate under Title VII (Count III); Failure to Accommodate under NJLAD (Count IV); and a Declaratory Judgment (Count V). *Id.*

Valley asserted as an Affirmative Defense that "Plaintiffs' claims fail because any accommodation requested would have been unreasonable or would have created an undue hardship for Defendants and *would have unnecessarily placed other employees and hospital patients at risk*." (*emphasis added*) [ECF #18 at Affirmative Defense 12]. In a joint letter to the Court, Valley further made its position clear in a

5

joint letter to the Court, stating "No unvaccinated employees were permitted to work on premises, regardless of whether they sought an exemption for religious or disability reasons." [ECF #32 at 3.]

The Relevant Governmental Orders

On or about August 6, 2021, the Honorable Philip D. Murphy, Governor of New Jersey, entered Executive Order No. 252, ordering that:

> Covered health care and high-risk congregate settings ("covered settings") must maintain a policy that requires covered workers to either provide adequate proof that they have been fully vaccinated or submit to COVID-19 testing at minimum one to two times weekly. This requirement shall take effect on September 7, 2021, at which time any covered workers that have not provided adequate proof that they are fully vaccinated must submit to weekly or twice weekly testing on an ongoing basis until fully vaccinated.

Certification of John D. Coyle ("Coyle Cert.") Ex. A. On October 7, 2021, the Honorable Judith M. Persichilli, Commissioner of the New Jersey Department of Health, Governor of New Jersey, entered Executive Directive No. 21-011, directing that each Health Care Facility prepare and maintain weekly "COVID-19 Immunization Status Report," which were to be submitted to the Department of health ("DOH") upon request. At that time, the reports were required to contain, among other things, the number of Covered Workers, the number of Covered Workers who were fully vaccinated, and the number of workers who submitted to once or twice weekly testing. Coyle Cert., Ex. B.

On April 6, 2022, Commissioner Persichilli issued a revised Executive Directive No. 21-011, requiring the COVID-19 Immunization Status Reports to identify the Number of Covered Workers who have a documented medical exemption from the COVID-19 vaccination and the number of Covered Workers who have a documented religious exemption from the COVID-19 vaccination. Coyle Cert., Ex. C at ¶11(a).

**The Subpoenas**

On June 26, 2025, Plaintiffs issued *Subpoenas to Testify at a Deposition in a Civil Action* to the Third-Party Hospitals.  The subpoenas sought the testimony of a corporate representative from each specific hospital system as to six topics:

1. The number of Covered Workers[1] as of September 7, 2021, which was the Effective Date of Executive Order No. 252.
2. For the period from June 1, 2021 through June 1, 2022, any mandatory COVID-19 vaccination policy.
3. For the period from June 1, 2021 through June 1, 2022, the number of Covered Workers who sought a religious exemption from the mandatory vaccination policy.
4. For the period from June 1, 2021 through June 1, 2022, the number of Covered Workers who sought a medical or disability exemption from the mandatory vaccination policy.
5. The number of Covered Workers granted a religious accommodation from the mandatory COVID-19 vaccination policy and the nature of the accommodations granted.
6. The number of Covered Workers granted a medical or disability

---

[1]    The Subpoenas subject to this motion used the term "Covered Workers," which is defined in New Jersey Executive Order No. 252 as "employees, both full- and part-time, including individuals providing operational or custodial services or administrative support."  N.J. Exec. Order. No. 252.

accommodation from the mandatory COVID-19 vaccination policy and the nature of the accommodations granted.

Coyle Cert., Exs. D, E, F. The subpoenas further requested the following documents

from each specific hospital system

1. Each "COVID-19 Immunization Status Report" prepared in accordance with Executive Directive No. 21-011.

2. For the period from June 1, 2021 through September 6, 2023, all reports submitted to the New Jersey Department of Health that reflect, refer or relate to the vaccination status of Covered Workers.

3. For the period from June 1, 2021 through September 6, 2023, all reports submitted to the New Jerey Hospital Association that reflect, refer or relate to the vaccination status of Covered Workers.

4. For the period from June 1, 2021 through June 1, 2022, any mandatory COVID-19 vaccination policy.

5. For the period from June 1, 2021 through June 1, 2022, documents sufficient to demonstrate the number of Covered Workers who were granted a religious exemption and/or accommodation from any mandatory COVID-19 vaccination policy, including Executive Order No. 252 or any HMH policy.

6. For the period from June 1, 2021 through June 1, 2022, documents sufficient to demonstrate the number of Covered Workers who were granted a medical (or disability) exemption and/or accommodation from any mandatory COVID-19 vaccination policy, including Executive Order No. 252 or any hospital policy.

Coyle Cert., Exs. D, E, F.

## **RELEVANT PROCEDURAL HISTORY**

Plaintiffs served subpoenas on the AHS, HMH, and RWJ Barnabas Health on June 27, 2025.  HMH made no attempt to contact Plaintiffs' counsel based on its receipt of the HMH Subpoena.  On July 10, 2025, HMH filed its Motion to Quash. [ECF #49]

Since then, counsel for Plaintiffs have engaged in meet and confer discussions with counsel for AHS and RWJ to limit, without prejudice, the scope of the discovery sought in their respective subpoenas. While those discussions are continuing, we have agreed, *inter alia*, to withdraw the requests for depositions until after we engage further with discovery so that the scope of any deposition, if needed, will be more focused. We would agree to the same limitation here.

<u>**ARGUMENT**</u>

**I.    The Standard for a Protective Order**

Federal Rule of Civil Procedure ("FRCP") 45 provides that a party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. When a party does not have standing to challenge a third-party subpoena under FRCP 45, they may have standing to move for a protective order pursuant to FRCP 26.

Protective orders are intended to offer litigants a measure of privacy and require balancing between public and private concerns. *Price v. Cty. of Salem*, No. 22-6042 (RBK)(EAP), 2024 U.S. Dist. LEXIS 40827 at *9 (D.N.J. Mar. 8, 2024) (quoting, *Pansy v. Borough of Stroudsbur*g, 23 F.3d 772, 786 (3d. Cir. 1994)). The party seeking a protective order over discovery must demonstrate that 'good cause' exists for the order." *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig*., 924 F.3d 662, 671 (3d Cir. 2019) (quotation omitted). Good cause requires a showing

9

with specificity that the discovery sought would result in a clearly defined and serious injury. *Id.* (quoting *Pansy*, at 786). Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing" as required.   Pansy, at 786 (quoting *Cipollone v. Liggett Grp.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

Valley relies on the court's decision in *Staff4Jobs, LLC v. List Logistics, LLC,* where a motion to quash was granted on the basis of "relevance" concerns. *Civil Action No. 18-13399 (BRM)(LHG), 2020 U.S. Dist. LEXIS 267689 (D.N.J. Oct. 19, 2020) (see* Defendants' Brief at p. 8). Relevance is "viewed in light of the allegations of the complaint, not as to evidentiary admissibility." *Price v. Cnty of Salem,* at *11. (quoting, *Scouler v. Craig,* 116 F.R.D. 494, 496 (D.N.J. 1987).   In *Staff4Jobs*, defendant served a third -party subpoena seeking, all discovery exchanged in a prior legal action "including without limitation, deposition transcripts and exhibits, document demands and productions, and interrogatories and admissions, and obvious difference from the three subpoenas at issue here. *Staff4Jobs* at *3.

There are five (5) factors the court considers in determining a subpoena's relevance: (1) the party's need for the production; the nature and importance of the litigation; (2) the relevance of the material; (3) the breadth of the request for production; (4) the time period covered by the request; (5) the particularity with which the documents are described; and (6) the burden imposed on the subpoenaed

party. *Weinstein v. Brisman,* Civil Action No. 18-3910 (KM) (MAH), 2020 U.S. Dist. LEXIS 53151 at *5 (D.N.J. Mar. 26, 2020) (quoting *In re Lazaridis*, 865 F. Supp. 2d 521, 524 (D.N.J. 2011).

## II.    The Information and Documents Sought Are Relevant for the *McDonnell Douglas* Burden Shifting Analysis

Valley contends that the Subpoena requests testimony and documents that are irrelevant to the litigation and a protective order is required.  However, the elements of a *prima facie* case for discrimination and for failure to accommodate and more specifically the burden shifting test set forth in *McDonnell Douglas Corp. v. Green* deems the information sought via the subpoenas on three (3) hospital systems in New Jersey is not only relevant but integral to Plaintiffs' burden in overcoming Valley's defense that unvaccinated employees could not be reasonably accommodated from the Policy without placing an undue burden on Valley vis-à-vis health and safety risks the patients, staff, and employees.

"To analyze claims under the LAD, New Jersey has adopted the "procedural burden-shifting methodology articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Tisby v. Camden Cty. Corr. Facility*, 448 N.J. Super. 241, 248 (App. Div. 2017) (citing *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005)). Once the plaintiff has established her prima facie case, "an 'inference of discrimination' is created." *Tisby* at 249. The burden then shifts to the employer to

11

articulate a "legitimate, nondiscriminatory reason for the employer's action." *Id.* If the employer meets that burden, "the burden again shifts back to the employee to prove the reason provided by the employer is 'merely a pretext for discrimination and not the true reason for the employment decision.'" *Id.* It is this final step -- Plaintiffs' burden to demonstrate pretext – that requires the discovery sought from AHS, HMH, and RWJ Barnabas.

Continuing our reliance on *Tisby*, the *Tisby* Court stated: "A plaintiff can prove pretext by using either circumstantial or direct evidence." *Id.* at 249. As noted above, Valley has asserted that it did not discriminate against Plaintiffs when it denied them accommodations because "any accommodation requested would have been unreasonable or would have created an undue hardship for Defendants and would have unnecessarily placed other employees and hospital patients at risk." [ECF #18 (Answer) at Affirmative Defense #12.] Plaintiffs intend to demonstrate that Valley's affirmative defense that unvaccinated staff members created an undue hardship was a pretext for discrimination because hospitals throughout New Jersey, including the Third-Party Hospitals were able to accommodate employees including those requiring patient contact who sought and obtained exemptions from their mandatory COVID-19 vaccination policies which were required to be implemented in accordance with state and federal law.

The Subpoenas served on the Third-Party Hospitals sought reports that they were each individually required to prepare and maintain as directed by its governing administrative regulatory agency. The early versions of those "COVID-19 Immunization Status Reports" were required to contain the number of Covered Workers, the number of Covered Workers who were fully vaccinated, and the number of workers who submitted to once or twice weekly testing. The later versions of the COVID-19 Immunization Status Reports drilled down further to identify the number of Covered Workers who had documented religious or medical exemptions to a mandatory COVID-19 vaccination policy.

Plaintiffs sought the same set of documents through three separate Requests: (1) based on the Third-Party Hospitals' obligation to prepare the Reports pursuant to Executive Directive No. 21-011; (2) based upon whether the Third-Party Hospitals submitted those Reports to the DOH, which request was available to the DOH in Executive Directive No. 21-011; and (3) based upon whether the Third-Party Hospitals HMH submitted to Reports to the New Jersey Hospital Association, acting as an agent for collection of documents on behalf of the DOH. Coyle Cert., Exs. D, E, F, Schedule 2, Requests 1 - 3. Plaintiffs, likewise, requested the Third-Party Hospitals' mandatory COVID-19 vaccination policies in order to compare them with the Valley Policy. Coyle Cert., Exs. D, E, F, Schedule 2, Request 4.

Finally, Plaintiffs sought "documents sufficient" to demonstrate the number

of Covered Workers who were granted either a religious exemption or a medical (or disability) exemption to each hospitals' respective mandatory COVID-19 vaccination policy.  If the Third-Party Hospitals faithfully prepared and maintained its Status Reports, those same Reports likely satisfy Request Nos. 5 and 6 on each subpoena.  Coyle Cert., Exs. D, E, F, Schedule 2, Request Nos. 5-6.

Valley claims the discovery sought from the Third-Party Hospitals is "untethered to the claims at issue and disproportionate to the needs of the case. (*see* Defendants' Brief, p. 8). However, the fact that other hospital systems seemingly enacted a vaccine policy in accordance with the executive orders and further abided by state and federal law by providing religious exemptions and reasonable accommodations to employees without suffering an undue burden is critical to not only plaintiffs' allegations but Valley's affirmative defenses.

By way of example, Plaintiffs refer to the court to the specific circumstances of Ms. Casamassina's termination. On July 13, 2021 Plaintiff Melissa Casamassina requested a religious exemption and accommodation from Valley's Policy in accordance with state and federal law. Coyle Cert., Ex. G.  On August 26, 2021 Valley denied Ms. Casamassina's request stating:

> We want to inform you that while we understand and recognize your right to have a valid religious belief, after careful deliberation Valley has determined that we are not able to grant you an accommodation in the form of an exemption to the COVID-19 vaccine policy at this time. Valley has determined that granting the requested

> accommodation would create an undue hardship to our
> operations given the nature of your patient-care role and
> more important, pose a significant and direct threat to
> Valley's vulnerable patient population and other
> employees. We have a responsibility to protect these
> patients and others you interact with and exposing them to
> unvaccinated staff significantly increases their risk of
> infection by COVID-19 and puts their lives at risk.

Coyle Cert., Ex. H.  In response to Plaintiff Casamassina's denial to Valley's Policy,

an appeal was submitted on her behalf. The appeal letter informed Valley of the

following:

> Merely using the words, "undue hardship" is not a
> replacement for participating in the mandatory EEOC
> accommodations process. The current legal mandate from
> the Governor of New Jersey has placed a requirement for
> vaccination or testing for all employees in Executive
> Order 252. According to recent estimates as many as 5%
> to 10% of all healthcare workers in New Jersey are
> unvaccinated. The article notes that Hackensack Meridian
> Heath has a 9% non-vaccinated rate and Holy Name has
> 12%. University Hospital in Newark has 5% of its staff
> exempted from the COVID vaccine due to a religious
> objection.
>
> A calculation from April 2020 lists 394,630 total health
> care workers in New Jersey. If the low-end 5% calculation
> is correct, that means that there 19,731 unvaccinated
> health care workers in New Jersey; nearly 40,000 if the
> 10% number is correct. Somehow Ms. Casamassina is
> completely different from the 40,000 other unvaccinated
> healthcare workers in New Jersey.
>
> Or the difference is Valley. Instead of participating in the
> legally mandated interactive process, Valley has set up a
> pretext for its religious discrimination against her and
> soon-to-be wrongful termination.

Coyle Cert., Ex. I. Valley has been on notice since before this litigation began that other hospital systems in New Jersey were able to provide patient-facing healthcare workers with exemptions and accommodations to their own mandatory vaccine requirements as required by executive order and continued to rely on their pretext that unvaccinated staff members put patients at risk.

In short, the burden-shifting analysis required in Title VII and NJLAD religious discrimination cases, clearly demonstrates the need and relevance of the information and documents sought through the subpoenas. The information sought from the Third-Party Hospitals is relevant to the claims and defenses asserted in this matter, and Valley's motion for a protective order based on relevance must be denied.

Defendants rely on the District Courts decision to grant a protective order in *Price v. County of Salem* where plaintiffs served subpoenas to eighteen (18) county correctional facilities in an effort to identify a non-arbitrary suicide identification policy. *Price* at *5. While the motion for a protective order in *Price* was ultimately granted, the court acknowledged that allegations in the complaint, "may have a connection to the allegedly improper at-risk identification procedures," and granted the motion for the protective order only because "plaintiffs failed to demonstrate the relevance of the requested information to the allegations in the Third Amended Complaint." *Id*. at *12-*14.

In this case Plaintiffs have the burden of identifying a pretext to Defendants' decision to deny Plaintiffs' religious exemption request and accommodation to the Policy due to "health and safety" concerns. The court in *Price* granted defendant's motion for a protective order finding that "correctional facility in a different county, with a different facility, addressing a different prison population is run," the same cannot be said for the implementation of mandatory vaccination policies pursuant to an executive order, which still required compliance with state and federal law. Furthermore, rather than comparing policies in completely different facilities, with different populations, there is a striking difference from the hospitals here.

Valley materially misinterprets the purpose of Plaintiffs' subpoenas to the Third-Party Hospitals. Plaintiffs do not intend to use the information received from the Third-Party Hospitals to analyze Valley's Policy, Plaintiffs' exemption and/or accommodation requests to Valley*,* what constituted undue burden for Valley, or Plaintiff's separations from Valley. Instead, Plaintiffs intend to rely on the information received from the Third-Party Hospitals to demonstrate that Valley's affirmative defense that it could not accommodate unvaccinated employees without suffering undue burden was a pretext to discriminate against plaintiffs who could not get vaccinated due to their sincerely held religious beliefs. Accordingly, the motion for a protective Order should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully requests that the Court deny

the Defendants Motion for a Protective Order.

**COYLE LAW GROUP, P.C.**
Attorneys for Plaintiffs

Dated: August 4, 2025                    By: *s/ John D. Coyle*
                                                                     JOHN D. COYLE